### IN THE MATTER OF BRIAN W. SMITH.

[No. 875S192. Filed July 7, 1976.]

*Respondent ordered to appear for public reprimand.*

*Alan F. Hizer,* of Fort Wayne, for respondent.

*Craig Stevens,* of Indianapolis, for Indiana Supreme Court Disciplinary Commission.

PER CURIAM—This is a disciplinary proceeding before the Court on the Hearing Officer's findings of fact and recommendations. Neither the respondent nor the Disciplinary Commission has petitioned this Court for review as permitted by Admission and Discipline Rule 23, § 15.

The respondent in this cause is charged with violating his oath as an attorney and the Code of Professional Responsibility for Attorneys at Law by contravening Disciplinary Rules 1-102(A)(5) and (6); 5-105(A), (B), and (C); and 7-101(A)(1), (2), and (3). The alleged course of improper conduct arises from respondent's representation of the complainants in a collection matter.

At the outset of this case, it is necessary that a procedural question raised by the respondent be resolved. Respondent has moved that this proceeding be dismissed in that the Disciplinary Commission, during the investigative stage of proceedings, did not follow Admission and Discipline Rule 23, as then in effect.[1] The respondent contends that under § 10(b) of Admission and Discipline Rule 23, the Executive Secretary had to docket the matter for investigation within forty-five days after notice of the complaint to the respondent or dismiss the claim.

§ 10(b) had application in this case only after the matter had been classified as potential misconduct. Admission and Discipline Rule 23, § 10(a) provides that the Executive Secretary, upon receipt of a claim of misconduct, make an appropriate preliminary investigation. Once this is completed, the matter is classified as potential misconduct, and the respondent given notice of the complaint and classification, the forty-five day period and limitation imposed under § 10(b) commences.

The exhibits introduced during the hearing of this matter demonstrate that on November 13, 1974 the respondent was notified that a grievance was filed against him by the complainants, which at that time was classified as a "non-misconduct" matter. Thereafter, on June 11, 1975, the respondent was notified that the matter had been reclassified and on June 27, 1975, the claim was docketed. In this case the forty-five day period began on June 11, 1975 and the docketing on June 27, 1975 came within the time requirements established by Admission and Discipline Rule 23, § 10(b).

Upon the filing of the complaint in this cause, a Hearing Officer was appointed, the cause was heard and argued, and the Hearing Officer has filed his findings of fact and recommendations. Upon consideration of these findings and after

1. These procedures were modified as of January 31, 1976.

review of the record of proceedings in this matter, this Court finds that the respondent, a member in good standing of the Bar of the State of Indiana, was employed by Mr. and Mrs. Floyd Pittman, on October 19, 1973, to undertake the collection of an unliquidated claim owed to the Pittmans. A contingent fee contract in the amount of 30% was signed on that date. Thereafter, the respondent effected an agreement whereby the Pittmans were to be paid forty dollars each month, less the respondent's fees, until the full amount of $726.00 had been paid.

Sometime in the month of June 1974, Respondent was employed by Ovid A. Larr to collect all the outstanding unpaid accounts, judgments, and civil actions pending of Larr Elevator and Feed Company. There were approximately twenty such accounts, one of which was against Floyd Pittman, the respondent's client in the prior collection action.

On July 29, 1974, the respondent's secretary transcribed and, with the respondent's facsimile signature, signed a letter to Mr. Floyd Pittman stating that the respondent had been employed by Larr Elevator Company to collect a delinquent account with interest in the amount of $240.51 and that if satisfactory arrangements were not made to pay this account, it would be necessary for the respondent to proceed against Mr. Pittman in court. The next day Mrs. Pittman contacted the respondent by telephone concerning his letter of July 29, 1974; this was the first time the respondent had actual knowledge of the multiple employment situation. During the course of this conversation, the respondent informed Mrs. Pittman of the ramifications of the judgment pending against her and Mr. Pittman and further advised Mrs. Pittman that he could not represent the Larr Elevator and Feed Company in any formal proceeding against them with regard to this account. At this point Mrs. Pittman and the respondent entered into an oral agreement whereby the respondent would take the proceeds the respondent was receiving monthly in the Pittman's behalf and apply them to the Larr account. On August

2, 1974, the respondent sent a balance sheet to the Pittmans indicating that all future payments would be credited to the Larr account.

This agreement was terminated by Mrs. Pittman on August 3, 1974, and respondent notified Larr that he could not represent him in this matter. No proceeds were actually paid over to the Larr account and in time the Pittmans were paid in full under the terms of the settlement negotiated by the respondent.

In light of these circumstances, this Court finds that the respondent violated Disciplinary Rule 5-105(B), which provides as follows:

> "A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5-105(C)."

At the time the conflict arose between Respondent's clients, it became incumbent upon him to act in the best interests of his first-acquired client, Mr. and Mrs. Pittman. A lawyer's fiduciary obligation is not met by making temporary arrangements to mold the needs of a particular client into the ethical structures that are established by the Code of Professional Responsibility. The respondent attempted to do this through an intra-office transfer of funds. This falls far short of the duty owed a client. The requirements of Disciplinary Rule 5-105(B) do allow certain exceptions, which are outlined in Discipline Rule 5-105(C).

> "In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."

We believe, however, that the conflict in this case was so apparent and unreconcilable that the respondent had no alternative but to decline to represent his second-acquired client, Larr, in the collection matter against the Pittmans.

This Court must further comment upon the manner in which Larr's claim was handled by the respondent. The Pittmans were notified that the respondent might have to pursue Mr. Larr's claim against them in court. The Hearing Officer found that this notification was sent without the knowledge of the respondent. We cannot condone this type of procedure. This lack of knowledge is a mitigating circumstance, but not controlling. The respondent has to bear the responsibility for his employee's conduct, especially when such conduct involves the mailing of a letter over his apparent signature. The client in this case had good reason to protest upon receipt of a letter threatening litigation from the attorney they thought was representing their interests. These circumstances further emphasize that respondent's ethical obligation was to decline representation immediately upon becoming aware of this multiple client situation.

This case does present some mitigating circumstances: respondent's experience level, the fact that the multiple representation was eventually terminated, the complete absence of any other suggestion of impropriety on the part of the respondent, and the respondent's fine reputation in his community. The incident leading to this proceeding appears to be an isolated event for which the respondent is sincerely apologetic.

With the foregoing considerations in mind, by reason of the above described violation of Disciplinary Rule 5-105(B), the respondent is hereby ordered to appear before this Court on Monday, August 2, 1976, at 1:30 p.m., for public reprimand.

It is further ordered that prior to said appearance, the respondent shall pay to the Clerk of this Court the costs of these proceedings. Failing herein, the respondent shall be suspended from the practice of law in this State pending further order of this Court.

NOTE.—Reported at 351 N.E.2d 1.